1
2
3
4
5
6
7
8              UNITED STATES DISTRICT COURT

9            FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   SANTIAGO JAMES CHAVEZ, JR.,              No.  2:24-cv-2491 DJC AC P

12              Plaintiff,

13         v.                                 ORDER

14   SONYA DIXON,

15              Defendants.

16

17         Plaintiff is a state inmate who filed this civil rights action pursuant to 42 U.S.C. § 1983

18   without a lawyer.  He has requested leave to proceed without paying the full filing fee for this

19   action, under 28 U.S.C. § 1915.  ECF No. 11.  Plaintiff has submitted a declaration showing that

20   he cannot afford to pay the entire filing fee.  See 28 U.S.C. § 1915(a)(2).  Accordingly, plaintiff's

21   motion to proceed in forma pauperis is granted.[1]

22   ////

23   ////

24

25   ----

     [1]  This means that plaintiff is allowed to pay the $350.00 filing fee in monthly installments that
     are taken from the inmate's trust account rather than in one lump sum.  28 U.S.C. §§ 1914(a),
26   1915(b)(1).  As part of this order, the prison is required to remove an initial partial filing fee from
     plaintiff's trust account.  See 28 U.S.C. § 1915(b)(1).  A separate order directed to the appropriate
27   agency requires monthly payments of twenty percent of the prior month's income to be taken
     from plaintiff's trust account.  These payments will be taken until the $350 filing fee is paid in
28   full.  See 28 U.S.C. § 1915(b)(2).

1    I.        Statutory Screening of Prisoner Complaints

2          The court is required to screen complaints brought by prisoners seeking relief against "a

3    governmental entity or officer or employee of a governmental entity."  28 U.S.C. § 1915A(a).  A

4    claim "is [legally] frivolous where it lacks an arguable basis either in law or in fact."  Neitzke v.

5    Williams, 490 U.S. 319, 325 (1989).  The court may dismiss a claim as frivolous if it is based on

6    an indisputably meritless legal theory or factual contentions that are baseless.  Id. at 327.  The

7    critical inquiry is whether a constitutional claim, however inartfully pleaded, has an arguable

8    legal and factual basis.  Jackson v. Arizona, 885 F.2d 639, 640 (9th Cir. 1989), superseded by

9    statute on other grounds as stated in Lopez v. Smith, 203 F.3d 1122, 1130 (9th Cir. 2000).

10          In order to avoid dismissal for failure to state a claim a complaint must contain more than

11    "naked assertion[s]," "labels and conclusions," or "a formulaic recitation of the elements of a

12    cause of action."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 557 (2007).  In other words,

13    "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory

14    statements, do not suffice."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  A claim upon which the

15    court can grant relief has facial plausibility.  Twombly, 550 U.S. at 570.  "A claim has facial

16    plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable

17    inference that the defendant is liable for the misconduct alleged."  Iqbal, 556 U.S. at 678 (citation

18    omitted).  When considering whether a complaint states a claim, the court must accept the

19    allegations as true, Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam), and construe the

20    complaint in the light most favorable to the plaintiff, Jenkins v. McKeithen, 395 U.S. 411, 421

21    (1969) (citations omitted).

22    II.        Factual Allegations of the Complaint

23          The complaint alleges that defendant Sonya Dixon, a staff cook supervisor employed at

24    High Desert State Prison ("HDSP"), violated plaintiff rights under the Prison Rape Elimination

25    Act ("PREA"), 34 U.S.C. §§ 30301-30309; Title 15 § 3004(a) of the California Code of

26    Regulations ("CCR" or "Cal. Code Regs."); Title VII of the Civil Rights Act of 1964, 42 U.S.C.

27    § 2000e, et seq; and the First, Eighth, and Fourteenth Amendments to the United States

28    Constitution.  ECF No. 10.  Specifically, the complaint alleges that plaintiff worked in the kitchen

2

1   at HDSP with defendant Dixon and that Dixon made sexual and inappropriate comments on a

2   regular basis to plaintiff and other inmates and staff.  Id. at 3, 7-8.  For over a year, plaintiff

3   engaged in "sexually charged inappropriate conversations" with defendant because they were

4   commonplace conversations that he felt obligated to participate in or risk being "ostracized,"

5   "fired," and/or "retaliated against."  Id. at 8.  On January 8, 2024, while plaintiff and other

6   inmates were working in the kitchen frosting cakes with white frosting, defendant made a sexual

7   comment about a co-worker getting "some of that white shit on her face by her old man later."

8   Id.  All inmates laughed.  Id.  Sometime thereafter, plaintiff left to go to an internal affairs ("IA")

9   interview to discuss staff misconduct by another HDSP staff member.  Id. at 3, 8.  Defendant

10  knew why plaintiff had left.  Id. at 8.  When plaintiff returned, he, like other inmates that day,

11  made sexual remarks.  Id. at 9.  For the first time, defendant wrote plaintiff up, accused him of

12  acts he did not commit, and charged him with a serious rules violation of "CCR Title 15

13  § 3005(a) – [18] 'Over-familiarity,'" which does not exist.  Id.  No-one else was written up for

14  their sexual remarks.  Id.  As a result, plaintiff was convicted of a false and/or nonexistent section

15  of the CCR and plaintiff lost his job, and 30 days of good time credit.  Id. at 3-4, 7-9.

16        Attached to the complaint is a copy of the rules violation report ("RVR") and plaintiff's

17  prison grievance.  Id. at 11-15.  The RVR includes a summary of the circumstances of the

18  violation and classifies the violation as serious.  Id. at 11.  The grievance addresses the allegations

19  in the complaint and states that when plaintiff was escorted out of his job, defendant and another

20  co-worker commented that anyone who testifies against them will lose their jobs.  Id. at 14-15.

21        By way of relief, plaintiff seeks monetary damages, declaratory relief, and that defendant

22  be counseled, reprimanded, and/or removed from her supervisory role.  Id. at 6.

23        III.    Claims for Which a Response Will Be Required

24        After conducting the screening required by 28 U.S.C. § 1915A(a), and liberally construing

25  plaintiff's allegations, the court finds that the complaint adequately states a First Amendment

26  claim against defendant Dixon for writing plaintiff up after he discussed workplace misconduct

27  with IA, causing plaintiff to lose his job and good time credits.

28  ////

3

1      IV.      <u>Failure to State a Claim</u>

2              The allegations in the complaint are not sufficient to state claims under the Eighth

3      Amendment, Title VII, PREA, CCR, or the Fourteenth Amendment.

4              Plaintiff fails to state an Eighth Amendment sexual abuse and/or harassment claim

5      because defendant Dixon's inappropriate and/or vulgar comments and/or statements, even if of

6      regular occurrence, are not sufficient to violate the Eighth Amendment.  To offend the Eighth

7      Amendment, a sexual abuse or harassment claim must be based on physical contact.

8              To the extent plaintiff is attempting to state a Title VII claim for sexual harassment,

9      hostile work environment, and/or retaliation, he fails to do so because he has not named a proper

10     defendant.  Even if he had, he provides insufficient facts from which the court can infer he is an

11     "employee" under Title VII.  Moreover, even if he names a proper defendant and is an

12     "employee" for Title VII purposes, it appears his claims may be untimely and unexhausted.

13             Plaintiff also fails to state a claim based on a violation of PREA and/or CCR.  To state a

14     § 1983 claim, plaintiff must allege a violation of a *federal right*.  Although PREA is federal law,

15     it does not contain a private right of action, nor does it create a right enforceable under § 1983.

16     Similarly, a violation of state regulations, such as the CCRs, is not a violation of a federal right,

17     and therefore not a basis for a § 1983 claim.  Plaintiff also fails to state a claim based on false

18     allegations in an RVR because false allegations of misconduct do not violate the constitutional

19     rights of prisoners and cannot themselves support relief under § 1983.

20             Additionally, to the extent plaintiff is attempting to state a Fourteenth Amendment

21     procedural due process claim based on his liberty interest in good time credits, he fails to do so

22     because he has not alleged that he was deprived of sufficient notice, a written decision,

23     opportunity to call witnesses and present evidence, and/or an impartial decisionmaker.  Nor has

24     he alleged his guilt was not supported by *some* evidence.  To the extent plaintiff's allegations can

25     be liberally construed as alleging he was not given proper notice of the charges against him

26     because the charge does not exist, he is wrong.  A charge of overfamiliarity does exist under

27     CCR.  Section § 3005(a) states "[i]ncarcerated and supervised persons shall obey all laws,

28     regulations, and local procedures, and refrain from behavior which might lead to violence or

4

1    disorder, or otherwise endangers facility, outside community or another person." Cal. Code Regs.

2    Tit. 15 § 3005(a).  Sections 3314 and 3315 provide non-exhaustive lists of administrative and

3    serious rules violations.  Cal. Code Regs. Tit. 15 §§ 3314(a)(3) ("Administrative rules violations

4    include but are not limited to . . ."), 3315(a)(3) ("Serious rules violations include but are not

5    limited to . . .").  For decades, prisoners have been charged with violations of § 3005(a) for over-

6    familiarity.[2]  Also, to the extent plaintiff is attempting to allege notice was otherwise insufficient,

7    he fails to do so because the contents of the attached RVR, listing the offense, level of offense,

8    and facts giving rise to the offense, were sufficient to put plaintiff on notice of what he needed to

9    prepare for a defense.  Furthermore, even if there were procedural defects in his disciplinary

10   proceedings, his due process claim would be barred by Heck v. Humphrey, 512 U.S. 477, 486-87

11   (1994) unless he can show his disciplinary conviction has been invalidated.

12        Because plaintiff is pro se and it appears to the court that plaintiff may be able to allege

13   facts to fix some of these claims, he will be given the option to file an amended complaint.

14        V.    Options from Which Plaintiff Must Choose

15        Based on the court's screening, plaintiff has a choice to make.  After selecting an option

16   from the two options listed below, plaintiff must return the attached Notice of Election form to

17   the court within 21 days from the date of this order.

18        **The first option available to plaintiff is to proceed immediately against defendant**

19   **Dixon on the First Amendment retaliation claim.  By choosing this option, plaintiff will be**

20   **agreeing to voluntarily dismiss his CCR, PREA, Title VII, and Eighth and Fourteenth**

21   **Amendment claims.  The court will proceed to immediately serve the complaint and order a**

22   **response from defendant Dixon.**

23        **The second option available to plaintiff is to file an amended complaint to fix the**

24   **problems described in Section IV.  If plaintiff chooses this option, the court will set a**

25   **deadline in a subsequent order to give plaintiff time to file an amended complaint.**

26   _____

27   [2]  See e.g., Medina v. Dickinson, No. 2:10-cv-0502 LLK AC P, 2013 WL 268710, at *10, 2013
     U.S. Dist. LEXIS 9166, at *27-28 (E.D. Cal. Jan. 23, 2013); Montue v. Clark, No. 08-0470 DMS

28   (POR), 2009 WL 1255518, at *3, 2009 U.S. Dist. LEXIS 41865, at *19-20 (E.D. Cal. Apr. 30,
     2009).

1    VI.    <u>Plain Language Summary of this Order for Party Proceeding Without a Lawyer</u>

2          Some of the allegations in the complaint state claims against the defendants and some do

3    not.  You have sufficiently stated a First Amendment retaliation claim against defendant Dixon,

4    but you have not stated any other claims against her.

5          You have a choice to make.  You may either (1) proceed immediately on your First

6    Amendment retaliation claim against defendant Dixon and voluntarily dismiss the other claims;

7    or, (2) try to amend the complaint.  To decide whether to amend your complaint, the court has

8    attached the relevant legal standards that may govern your claims for relief.  <u>See</u> Attachment A.

9          Pay particular attention to these standards if you choose to file an amended complaint.

10   **Any claims and factual information not in the amended complaint will not be considered.**

11   VII.    <u>CONCLUSION</u>

12          In accordance with the above, IT IS HEREBY ORDERED that:

13          1.  Plaintiff's request for leave to proceed in forma pauperis (ECF No. 11) is GRANTED.

14          2.  Plaintiff is obligated to pay the statutory filing fee of $350.00 for this action.  Plaintiff

15   is assessed an initial partial filing fee in accordance with the provisions of 28 U.S.C.

16   § 1915(b)(1).  All fees shall be collected and paid in accordance with this court's order to the

17   appropriate agency filed concurrently herewith.

18          3.  The complaint does not state any claims under the California Code of Regulations, the

19   Prison Rape Elimination Act, Title VII of the Civil Rights Act, and/or the Eighth and Fourteenth

20   Amendments to the United States Constitution for which relief can be granted.

21          4.  Plaintiff has the option to proceed immediately on his First Amendment retaliation

22   claim against defendant Dixon as set forth in Section III above, or to file an amended complaint.

23          5.  Within 21 days from the date of this order, plaintiff shall complete and return the

24   attached Notice of Election form notifying the court whether he wants to proceed on the screened

25   complaint or whether he wants to file an amended complaint.

26          6.  If plaintiff does not return the form, the court will assume that he is choosing to

27   proceed on the complaint as screened and will recommend dismissal without prejudice of

28   plaintiff's claims under the California Code of Regulations, the Prison Rape Elimination Act,

Title VII of the Civil Rights Act, and/or the Eighth and Fourteenth Amendments to the United

States Constitution.

DATED: November 20, 2025

ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE

1
2
3
4
5
6
7
8                        UNITED STATES DISTRICT COURT

9                   FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11    SANTIAGO JAMES CHAVEZ, JR.,              No.  2:24-cv-2491 DJC AC P

12                Plaintiff,

13         v.                                  NOTICE OF ELECTION

14    SONYA DIXON,

15                Defendant.

16

17         Check one:

18    _____ Plaintiff wants to proceed immediately on his First Amendment retaliation claim against

19         defendant Dixon without amending the complaint.  Plaintiff understands that by choosing

20         this option, the remaining claims under the California Code of Regulations, the Prison

21         Rape Elimination Act, Title VII of the Civil Rights Act of 1964, and the Eighth and

22         Fourteenth Amendments to the United States Constitution will be voluntarily dismissed

23         without prejudice pursuant to Federal Rule of Civil Procedure 41(a).

24    _____ Plaintiff wants time to file an amended complaint.

25

26    DATED:_____

27                                        _____
                                          Santiago James Chavez, Jr.
28                                        Plaintiff pro se

                                          1

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

<u>Attachment A</u>

This Attachment provides, for informational purposes only, the legal standards that may apply to your claims for relief.  Pay particular attention to these standards if you choose to file an amended complaint.

I.    <u>Legal Standards Governing Amended Complaints</u>

If plaintiff chooses to file an amended complaint, he must demonstrate how the conditions about which he complains resulted in a deprivation of his constitutional rights.  <u>Rizzo v. Goode</u>, 423 U.S. 362, 370-71 (1976).  Also, the complaint must specifically identify how each named defendant is involved.  <u>Arnold v. Int'l Bus. Machs. Corp.</u>, 637 F.2d 1350, 1355 (9th Cir. 1981). There can be no liability under 42 U.S.C. § 1983 unless there is some affirmative link or connection between a defendant's actions and the claimed deprivation.  <u>Id.</u>; <u>Johnson v. Duffy</u>, 588 F.2d 740, 743 (9th Cir. 1978).  Furthermore, "[v]ague and conclusory allegations of official participation in civil rights violations are not sufficient."  <u>Ivey v. Bd. of Regents</u>, 673 F.2d 266, 268 (9th Cir. 1982) (citations omitted).

Plaintiff is also informed that the court cannot refer to a prior pleading in order to make his amended complaint complete.  <u>See</u> Local Rule 220.  This is because, as a general rule, an amended complaint replaces the prior complaint.  <u>Loux v. Rhay</u>, 375 F.2d 55, 57 (9th Cir. 1967) (citations omitted), <u>overruled in part by</u> <u>Lacey v. Maricopa County</u>, 693 F.3d 896, 928 (9th Cir. 2012).  Therefore, in an amended complaint, every claim and every defendant must be included.

II.    <u>Legal Standards Governing Substantive Claims for Relief</u>

A.    <u>42 U.S.C. § 1983</u>

Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

1    42 U.S.C. § 1983.  Accordingly, "the requirements for relief under [§] 1983 have been articulated

2    as: (1) *a violation of rights protected by the Constitution or created by federal statute,* (2)

3    proximately caused (3) by conduct of a 'person' (4) acting under color of state law."  Crumpton v.

4    Gates, 947 F.2d 1418, 1420 (9th Cir. 1991) (emphasis added).

5         An officer's violation of state laws and/or regulations is not grounds for a § 1983 claim.

6    See Case v. Kitsap County Sheriff's Dept., 249 F.3d 921, 930 (9th Cir. 2001) (quoting Gardner v.

7    Howard, 109 F.3d 427, 430 (8th Cir 1997) ("[T]here is no § 1983 liability for violating prison

8    policy. [Plaintiff] must prove that [the official] violated his constitutional right . . .")).  Violations

9    of state law and regulations cannot be remedied under § 1983 unless they also violate a federal

10   constitutional or statutory right.  See Nurre v. Whitehead, 580 F.3d 1087, 1092 (9th Cir. 2009)

11   (section 1983 claims must be premised on violation of federal constitutional right); Sweaney v.

12   Ada Cty., Idaho, 119 F.3d 1385, 1391 (9th Cir. 1997) (section 1983 creates cause of action for

13   violation of federal law); Lovell v. Poway Unified Sch. Dist., 90 F.3d 367, 370 (9th Cir. 1996)

14   (federal and state law claims should not be conflated; "[t]o the extent that the violation of a state

15   law amounts the deprivation of a state-created interest that reaches beyond that guaranteed by the

16   federal Constitution, Section 1983 offers no redress").

17        B.  First Amendment Retaliation

18        To state a claim for retaliation, a plaintiff must allege defendants (1) took adverse action

19   against plaintiff (2) because of (3) plaintiff's protected conduct, and that the action (4) would chill

20   an inmate of reasonable firmness from future protected conduct and (5) lacked a legitimate

21   correctional goal.  Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005).

22        An adverse action is an act (or failure to act) by prison officials which causes harm, and

23   "the mere *threat* of harm can be an adverse action, regardless of whether it is carried out."

24   Brodheim v. Cry, 584 F.3d 1262, 1269-70 (9th Cir. 2009) (emphasis in original).  To show

25   defendants retaliated "because of" the plaintiff's actions, the plaintiff must show the defendants

26   were motivated by his protected conduct.  See Crawford-El v. Britton, 523 U.S. 574, 592 (1998)

27   (proof of defendant's general animosity toward plaintiff would not necessarily show her conduct

28   was motivated by plaintiff's protected conduct).  Protected conduct refers to acts taken by the

2

1  plaintiff that are protected by the First Amendment and may include lawsuits and grievances, as

2  well as verbal complaints or threats to sue.  See Rhodes, 408 F.3d at 567 (prisoners have a First

3  Amendment right to file prison grievances and pursue civil litigation); Shepard v. Quillen, 840

4  F.3d 686, 688 (9th Cir. 2016) (prisoners have "First Amendment right to report staff

5  misconduct"); Jones v. Williams, 791 F.3d 1023, 1036 (9th Cir. 2015) (threats to sue constitute

6  protected conduct); Entler v. Gregoire, 872 F.3d 1031, 1039 (9th Cir. 2017) (form of complaint,

7  including verbal, "is of no constitutional significance").

8         The alleged adverse action need not itself be an independent constitutional violation.  Pratt

9  v. Rowland, 65 F.3d 802, 806 (9th Cir. 1995) (to prevail on a retaliation claim, plaintiff "need not

10  establish an independent constitutional interest" was violated); see also Waitson v. Carter, 668

11  F.3d 1108, 1115 (9th Cir. 2012) (false disciplinary constituted adverse action); Gomez v. Vernon,

12  255 F.3d 1118, 1127-28 (9th Cir. 2001) (threat of job transfer, even if plaintiff quits before

13  transfer, is an adverse action).

14         C.  Eighth Amendment – Sexual Harassment

15         "Sexual harassment or abuse of an inmate by a corrections officer is a violation of the

16  Eighth Amendment."  Wood v. Beauclair, 692, F.3d 1041, 1046 (9th Cir. 2012) (citations

17  omitted).  "[S]exual assault serves no valid penological purpose," and "an inmate need not prove

18  that an injury resulted from sexual assault in order to maintain an excessive force claim under the

19  Eighth Amendment."  Bearchild v. Cobban, 947 F.3d 1130, 1144 (9th Cir. 2020) (citations

20  omitted).  To state an Eight Amendment sexual assault claim, a plaintiff must demonstrate "that a

21  prison staff member, acting under color of law and without legitimate penological justification,

22  touched the prisoner in a sexual manner or otherwise engaged in sexual conduct for the staff

23  member's own sexual gratification, or for the purpose of humiliating, degrading, or demeaning

24  the prisoner."  Id.

25         However, "the Eighth Amendment's protections do not necessarily extend to mere verbal

26  sexual harassment."  Austin v. Terhune, 367 F.3d 1167, 1171 (9th Cir. 2004) (internal citation

27  omitted).  While "the Ninth Circuit has recognized that sexual harassment may constitute a

28  cognizable claim for an Eighth Amendment violation, the Court has specifically differentiated

between sexual harassment that involves verbal abuse and that which involves allegations of physical assault, finding the latter to be in violation of the constitution." Minifield v. Butikofer, 298 F. Supp. 2d 900, 904 (N.D. Cal. 2004) (citing Schwenk v. Hartford, 204 F.3d 1187, 1198 (9th Cir. 2000)); Austin, 367 F.3d at 1171-72 (officer's conduct was not sufficiently serious to violate the Eighth Amendment where officer exposed himself to prisoner but never physically touched him); Benjamin v. Stevens Cnty., 839 F. App'x 100, 101 (9th Cir. 2020) (internal quotations omitted) ("sexually inappropriate statements on a daily basis, including vulgar stories about Walsh's coworkers and their family members" is not conduct that rises to an Eighth Amendment violation).

### D. False Allegations

False allegations of misconduct do not violate the constitutional rights of prisoners and cannot themselves support relief under § 1983. See Buckley v. Gomez, 36 F. Supp. 2d 1216, 1222 (S.D. Cal. 1997), aff'd without opinion, 168 F.3d 498 (9th Cir. 1999).

### E. Fourteenth Amendment – Disciplinary Due Process

Prisoners do not have a liberty interest in being free from false accusations of misconduct and therefore do not have a right to procedural safeguards in such instances. See Hines v. Gomez, 108 F.3d 265, 268 (9th Cir. 1997) ("there are no procedural safeguards protecting a prisoner from false retaliatory accusations"). Prisoners do, however, have limited procedural protections regarding disciplinary proceedings. Wolff v. McDonnell, 418 U.S. 539, 556 (1974) ("Prison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply.")

With respect to prison disciplinary proceedings that include the loss of good-time credits, an inmate must receive (1) twenty-four-hour advanced written notice of the charges against him, id. at 563-64; (2) "a written statement by the factfinders as to the evidence relied on and reasons for the disciplinary action," id. at 564 (citation and internal quotation marks omitted); (3) an opportunity to call witnesses and present documentary evidence where doing so "will not be unduly hazardous to institutional safety or correctional goals," id. at 566; (4) assistance at the hearing if he is illiterate or if the matter is complex, id. at 570; and (5) a sufficiently impartial fact

4

1  finder, id. at 570-71.  A finding of guilt must also be "supported by some evidence in the record."

2  Superintendent v. Hill, 472 U.S. 445, 454 (1985).

3        F.  *Heck* Bar – Favorable Termination Doctrine

4        A claim to recover monetary damages is not cognizable under § 1983 if success on the

5  claim "would necessarily imply the invalidity of [the plaintiff's] conviction or sentence."  Heck v.

6  Humphrey, 512 U.S. 477, 487 (1994).  To recover damages, "a § 1983 plaintiff must prove that

7  the conviction or sentence has been reversed on direct appeal, expunged by executive order,

8  declared invalid by a state tribunal authorized to make such determination, or called into question

9  by a federal court's issuance of writ of habeas corpus."  Id. at 486-87.

10       If judgement in favor of plaintiff regarding a denial of due process in *disciplinary*

11  *proceedings* would invalidate or imply the invalidity of the deprivation of good-time credits,

12  affecting the length of plaintiff's sentence, the claim is barred under Heck unless plaintiff can

13  show that the disciplinary conviction has been previously invalidated.  Edwards v. Balisok, 520

14  U.S. 641, 646-48 (1997) (applying Heck to disciplinary convictions that result in the loss of good-

15  time credits); see also Wilkinson v. Dotson, 544 U.S. 74, 81-82 (2005) ("[A] state prisoner's §

16  1983 action is barred (absent prior invalidation)–no matter the relief sought (damages or equitable

17  relief), no matter the target of the prisoners suit (state conduct leading to conviction or internal

18  prison proceedings)–if success in that action would necessarily demonstrate the invalidity of

19  confinement or its duration."); Hebrard . Nofziger, 90 F.4th 1000, 1010 (9th Cir. 2024) ("So long

20  as the claim 'indirectly seeks a judicial determination that necessarily implies the unlawfulness of

21  the duration of the Sate's custody,' Heck and Edwards require his § 1983 cause of action to be

22  dismissed—'only habeas corpus (or similar state) remedies' can be used to obtain such a ruling."

23  (quoting Wilkinson, 544 U.S. at 81-82)).

24       G.  Prison Rape Elimination Act ("PREA")

25       "In order to seek redress through § 1983, . . . a plaintiff must assert the violation of a

26  federal right, not merely a violation of federal law."  Blessing v. Freestone, 520 U.S. 329, 340

27  (1997) (emphasis in original) (citing Golden State Transit Corp. v. Los Angeles, 493 U.S. 103,

28  106, (1989).  The Prison Rape Elimination Act ("PREA"), 42 U.S.C. § 15601-15609, "authorizes

1    the reporting of incidents of rape in prison, allocation of grants, and creation of a study

2    commission," but there is nothing in the PREA to indicate that it created a private right of action,

3    enforceable under § 1983 or otherwise.  Johnson v. Garrison, 859 Fed. App'x 863, 863-64 (10th

4    Cir. 2021); McPherson v. Carpenter, No. 2:2-cv-0202 DC CSK, 2025 WL 745819, at *2, 2025

5    U.S. Dist. LEXIS 41814, at *5 (E.D. Cal. Mar. 7, 2025); Porter v. Jennings, No. 1:10-cv-01811-

6    AWI-DLB PC, 2012 WL 1434986, at *1, 2012 U.S. Dist. LEXIS 58021 (E.D. Cal. Apr. 25,

7    2012) (collecting cases).

8        Since PREA itself contains no private right of action, there is no corresponding right to

9    enforceable under § 1983.  See Graham v. Connor, 490 U.S. 386, 393-94 (1989) ("Section

10   1983 . . . provides a method for vindicating federal rights conferred elsewhere.").

11           H.  Title VII of the Civil Rights Act of 1964

12               i.  Proper Defendant

13       The Ninth Circuit has "consistently held that Title VII does not provide a cause of action

14   for damages against supervisors or fellow employees."  Holly D. v. California Inst. of Tech., 339

15   F.3d 1158, 1179 (9th Cir. 2003); Craig v. M & O Agencies, Inc., 496 F.3d 1047, 1058 (9th Cir.

16   2007) ("We have long held that Title VII does not provide a separate cause of action against

17   supervisors or co-workers.").  Congress imposed liability only on *employers* under Title VII, not

18   against individuals.  Miller v. Maxwell's Int'l Inc., 991 F.2d 583, 587-88 (9th Cir. 1993).

19               ii.  Employee

20       In 1988, the Ninth Circuit left open the possibility that a prisoner could be an "employee"

21   for purposes of Title VII claims.  Baker v. McNiel Island Corr. Ctr., 859 F.2d 124, 128 (9th Cir.

22   1988) (remanded to the district court for further findings regarding precise labor relationship);

23   Baker v. McNeil Island Corr. Ctr., 28 F.3d. 104 (9th Cir. 1994) (On remand, "the district court

24   assumed without deciding that an employment relationship existed for purposes of Title VII.").

25   The Ninth Circuit has not foreclosed this possibility but has clarified that a prisoner's relationship

26   with a prison employer that is penological and not pecuniary, is not an employment relationship.

27   Wade v. California Dep't of Corr., 171 F. App'x 601, 602 (9th Cir. 2006) ("The district court

28   properly dismissed Wade's Title VII claims because his relationship with the Prison Industry

6

1   Authority ("PIA") was penological not pecuniary, and he was not an employee for Title VII

2   purposes."); cf. Castle v. Eurofresh, Inc., 731 F.3d 901, 907-08 (9th Cir. 2013) (just like a

3   prisoner "obligated to work at some job pursuant to a prison work program" is not considered an

4   "employee" under the Fair Labor Standards Act, a prisoner obligated to work to comply with his

5   statutory obligation is not an "employee" under the Americans with Disabilities Act").

6                       iii.   Sexual Harassment Claims

7         Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq*. prohibits employers

8   from discriminating against employees on the basis of "race, color, religion, sex, or national

9   origin."  See 42 U.S.C. § 2000e-2(a).  To establish a prima facie case of disparate treatment

10  discrimination under Title VII, a plaintiff must show that he (1) is a member of a protected class;

11  (2) was qualified for and was performing his job satisfactorily; (3) experienced an adverse

12  employment action; and that (4) similarly situated persons outside his protected class were treated

13  more favorably, or other circumstances surrounding the adverse employment action give rise to

14  an inference of discrimination.  Hawn v. Exec. Jet Mgmt., Inc., 615 F.3d 1151, 1156 (9th Cir.

15  2010).

16        A "hostile work environment" through harassment is another form of prohibited

17  discrimination under Title VII.  Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 78

18  (1998); Meritor Sav. Bank, FSB v. Vinson, 477 U.S. 57, 64–65 (1986). "A hostile work

19  environment claim involves a workplace atmosphere so discriminatory and abusive that it

20  unreasonably interferes with the job performance of those harassed."  Brooks v. City of San

21  Mateo, 229 F.3d 917, 923 (9th Cir. 2000).  To state a hostile work environment claim under Title

22  VII, a plaintiff must plead sufficient facts to plausibly allege: "that he was subjected to verbal or

23  physical conduct of a sexual nature; (2) that this conduct was unwelcomed; and (3) that the

24  conduct was sufficiently severe or prevail to alter the conditions of the victim's employment and

25  create an abusive working environment."  Fried v. Wynn Las Vegas, LLC, 18 F.4th 643, 647 (9th

26  Cir. 2021).  "The working environment must both subjectively and objectively be perceived as

27  abusive."  Brooks, 229 F.3d at 923–24 (noting frequency, severity, and level of interference with

28  work performance as factors "particularly relevant to the inquiry").

                                              7

1        To state a prima facie case for retaliation, the plaintiff must establish that (1) he engaged

2 in a protected activity, (2) he subsequently suffered an adverse employment action, and (3) there

3 is a causal link between those two events.  <u>Dawson v. Entek Int'l</u>, 630 F.3d 928, 936 (9th Cir.

4 2011); <u>Cohen v. Fred Meyer, Inc.</u>, 686 F.2d 793, 796 (9th Cir. 1982).